```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION
```

| | | |
|---|---|---|
| IN THE MATTER OF HORIZON | § | |
| VESSELS, INC., AS OWNER, and | § | |
| HORIZON OFFSHORE CONTRACTORS, | § | |
| INC., HORIZON OFFSHORE, INC., | § | |
| and TEXAS OFFSHORE CONTRACTORS | § | |
| CORP., AS OWNERS, OPERATORS, | § | CIVIL NO. H-03-3280 |
| OWNERS PRO HAC VICE, of the | § | |
| L/B GULF HORIZON, PRAYING FOR | § | |
| EXONERATION FROM OR LIMITATION | § | |
| OF LIABILITY REGARDING THE | § | |
| INCIDENT OF FEBRUARY 27, 2003 | § | |

**ORDER**

Pending before the court is Petitioners' Motion to Strike Late Expert Report (Docket Entry No. 218) and the responses filed thereto. The motion is **GRANTED**.

This action was filed on August 15, 2003, seeking a limitation of liability for a maritime incident occurring on February 27, 2003, in the East River/Long Island Sound area in New York City. Since this case was filed, there have been several scheduling orders entered by the court. Of particular relevance to the present dispute are orders which set deadlines for expert reports.

The original scheduling order set March 9, 2005, as the deadline for claimants' liability reports. Docket Entry No. 86. Thales was considered a claimant for purposes of the scheduling order. This deadline was extended to July 8, 2005, then to October 7, 2005, and finally to December 23, 2005. See Docket Entry Nos. 115, 139, and 179. The parties informally agreed to extend the deadline for claimants' liability experts until January 4, 2006.

Thales produced the report of Anthony Keeler, an offshore construction expert.  Keeler's report discussed the scope of Thales's work and the basis for his opinion that Horizon was negligent while Thales was not.  Significantly, Thales produced no expert in the area of marine surveying.

At a status conference on January 24, 2006, the parties discussed the need for additional time for discovery and agreed on dates that were entered on a scheduling order.  Docket Entry No. 203.  While the order granted additional time for production of liability expert reports by the utility claimants and Petitioners, and set a deadline for naming damage experts for all parties other than the utility claimants, the order recited that the deadline to produce claimants' liability expert reports had expired on December 23, 2005.  Thales made no objection to this scheduling order.

On April 24, 2006, without leave of court or agreement of any party, Thales served on opposing counsel the expert report of Bruce Calderbank ("Calderbank"), a hydrographic surveyor.  Petitioner object to this late designation of Calderbank and move that he be stricken as an expert.

Petitioner correctly explains that, under Federal Rules of Civil Procedure 16, the court has broad discretion when enforcing the pretrial scheduling order.  Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875 (5th Cir. 2004); Barrett v. Atl. Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996).   Federal Rules of Civil

Procedure 37 authorizes the court to sanction a party who fails to comply with the scheduling order.

In determining whether to exclude an expert not properly designated, the court considers four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. Hamburger, 361 F.3d at 883 (citing Geiserman v. MacDonald, 893 F.3d 878, 791 (5th Cir. 1990)).

Under the docket control order, later amended by agreement of the parties, Thales, Iroquois, and the New York Power Authority ("NYPA") were to produce their expert reports on liability issues by January 4, 2006. Iroquois obtained the agreement of the parties to file an additional report rebutting NYPA's expert, Thomas Fletcher. Iroquois produced the rebuttal report of M. Brant LeBlanc ("LeBlanc") on March 23, 2006.

LeBlanc is an expert in the area of offshore marine construction. His report opined that Iroquois made correct use of industry experts, used drawings specifications and procedures that met or exceeded industry standard, and properly hired a surveyor to inspect the Gulf Horizon to determine its fitness for the project. LeBlanc also stated that, in his opinion, Iroquois acted reasonably and in accordance with industry standards when it relied on Pegasus to monitor the Gulf Horizon's performance, that industry standards

did not require Iroquois to monitor Pegasus's performance, and that the overriding cause of the incident was the lack of due care by the tower crew of the Gulf Horizon and the Thales surveyor in failing to follow the specifications and plans developed by Iroquois and Horizon.  Specifically rebutting NYPA's expert, LeBlanc found that Iroquois complied with the NYPA Crossing Agreement and that Pegasus did not have to "continuously" monitor the anchoring operations.  In pointing the finger of blame toward the Gulf Horizon tower crew and the Thales surveyor and away from his client, LeBlanc was of the opinion that the anchor operators should have been aware of the anchor dragging simply based on the gross movement from drop point to pick up point and should have carefully monitored the survey screen and winch cameras during this operation. LeBlanc claimed no expertise in marine surveying.

According to Thales, LeBlanc's criticisms were unexpected, and outside the scope of its agreement to allow the rebuttal report. Thales claims that it believed that the LeBlanc would only address those criticisms directed at Iroquois by NYPA's expert.

Thales argues that it was only after the LeBlanc report that criticisms of its survey work surfaced and that it did not need a surveying expert before that time.  That argument is simply incorrect; Thales's performance in surveying and monitoring placement of the anchors has always been an issue in this case. Consequently, Thales has not proffered a credible explanation for

4

its failure to timely designate a marine surveying expert before January 4, 2006.

The court notes that LeBlanc is not a marine surveyor and his report does not do more than make a passing reference to surveying. Hence, Thales's need for a rebuttal expert in the area of surveying is not critical.[1] If this expert were not stricken, the opposing parties would be prejudiced by being required to depose an additional expert after the discovery deadline and after motions for summary judgment have been filed.

In light of the foregoing, Petitioner's Motion to Strike Late Expert Report (Docket Entry No. 218) is **GRANTED**.

SIGNED this 17th day of July, 2006, in Houston, Texas.

Nancy K. Johnson
United States Magistrate Judge

---

[1] Thales has never suggested that its expert was in rebuttal to Horizon's surveying expert, Dean Pottle, or that the docket control order should be amended to allow it to name rebuttal experts to Horizon's experts. If that was the case, Thales had ample opportunity to seek leave of court, but failed to do so.